KHOUZAM, Judge.
On September 14, 2011, the Seminole Tribe of Florida filed a petition for writ of certiorari in the circuit court seeking to quash Ordinance 2011-07 adopted by Hen-dry County on May 24, 2011. The Ordinance rezoned 3127 acres of land from general agriculture to a Planned Unit Development (PUD) for the purpose of constructing a natural gas power plant and solar energy farm. The Seminole Tribe argued that the County’s adoption of the Ordinance departed from the essential requirements of the law because it violated the Local Development Code (LDC) and because the County had avoided its responsibility to review the project’s compatibility with the Big Cypress Seminole Indian Reservation and consistency with the County’s Comprehensive Plan. The circuit court denied the petition, and the Seminole Tribe now seeks second-tier cer- *22 tiorari review in this court. We deny the petition.
Our review in this case is limited to determining whether the circuit court afforded procedural due process and applied the correct law in denying the Seminole Tribe’s petition:
“[W]here full review of administrative action is given in the circuit court as a matter of right, one appealing the circuit court’s judgment is not entitled to a second full review in the district court. Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine [1] whether procedural due process is accorded, [2] whether the essential requirements of the law have been observed, and [3] whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court’s judgment, then determines whether the circuit court [1] afforded procedural due process and [2] applied the correct law.”
Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1092 (Fla.2000) (quoting City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982)). Notably, “the district court on second-tier certiorari review may not review the record to determine whether the agency decision is supported by competent substantial evidence.” Id. at 1093.
As a preliminary matter, we note that the circuit court incorrectly determined the Ordinance was not subject to certiorari review because the Seminole Tribe could not show irreparable injury.[1] However, despite making that determination, the circuit court went on to provide a full review of each of the Seminole Tribe’s arguments. Therefore, as will be shown below, the circuit court afforded procedural due process and applied the correct law.

CONSISTENCY WITH COMPREHENSIVE PLAN

First, the Seminole Tribe argues that the Ordinance was not consistent with the comprehensive plan, in violation of LDC section 1-53-5.4(1) (2010). That section provides as follows: “Only uses which are consistent with the comprehensive plan ... may be approved as a PUD.” The circuit court properly found that section 163.3215, Florida Statutes (2011), would preclude the Seminole Tribe from raising this issue in a petition for writ of certiora-ri. That section states that it provides the exclusive methods for a party to challenge the consistency of a development order with a comprehensive plan. § 163.3215(1). It provides that an adversely affected party may maintain a de novo action for declaratory or other relief to challenge a development order. § 163.3215(3). The Seminole Tribe filed a separate action under this subsection along with its certiorari petition. Though section 163.3215(4) provides that an adversely affected party may challenge a development order solely by *23 filing a petition for writ of certiorari if the local government has adopted an ordinance establishing various requirements, the parties have not identified and we have been unable to locate all of these requirements in the Hendry County Code. Consequently, the circuit court afforded procedural due process and applied the correct law in refusing to hear the issue of comprehensive plan consistency on certiorari review.

APPROVAL OF INCOMPATIBLE USES

Second, the Seminole Tribe argues that the Ordinance approved uses incompatible with the adjacent Big Cypress Reservation, in violation of LDC section 1-53-5.4. Specifically, the Seminole Tribe was concerned with the impact that the approved uses would have on water, ecotourism, and wildlife on the Reservation.[2] LDC section 1-53-5.4(1) provides as follows: “Only uses which ... are deemed by the board of county commissioners to be compatible with adjacent land uses may be approved as a PUD.” Section 163.3164(9), Florida Statutes (2011), defines “compatibility” as “a condition in which land uses or conditions can coexist in relative proximity to each other in a stable fashion over time such that no use or condition is unduly negatively impacted directly or indirectly by another use or condition.” However, LDC section l-53-5.3(c) also allows for the County to establish further requirements or conditions to ensure compliance with the comprehensive plan or the LDC.
The circuit court determined that the County has sufficiently addressed the issue of water use by conditioning the Ordinance on the approval of the South Florida Water Management District (SFWMD). The circuit court concluded that the water usage issues are within the exclusive jurisdiction of the Department of Environmental Protection or its successor, SFWMD. To support this proposition, the court pointed to section 373.217, Florida Statutes (2010), which authorizes the Department of Environmental Protection to provide programs for the issuance of permits for the consumptive use of water; states that the Florida Water Resources Act of 1972, sections 373.203-373.249, Florida Statutes (2010), provides the exclusive authority for requiring permits for the consumptive use of water; and establishes that the Florida Water Resources Act of 1972 supersedes any conflicting law or ordinance. Additionally, section 373.023, Florida Statutes (2010), provides:
(1) All waters in the state are subject to regulation under the provisions of this chapter unless specifically exempted by general or special law.
(2) No state or local government agency may enforce, except with respect to water quality, any special act, rule, regulation, or order affecting the waters in the state controlled under the provisions of this act, whether enacted or promulgated before or after the effective date of this act, until such special act, rule, regulation, or order has been filed with the department.
These statutory sections indicate that the water impact will be addressed by SFWMD and that the County ensured compatibility by conditioning the Ordinance on SFWMD’s approval.
As to ecotourism, the circuit court found that there was competent, substantial evidence to support the County’s determination that the power plant project and the *24 Seminole Tribe’s use of the Reservation “can coexist in relative proximity to each other in a stable fashion over time such that no use or condition is unduly negatively impacted directly or indirectly by” the other. See § 163.3164(9).
As to wildlife, the circuit court determined that the County had satisfied its obligation to ensure compatibility by requiring approval by the appropriate state and federal agencies having jurisdiction over water, wetlands, and wildlife habitat. The court pointed to article IV, section 9, of the Florida Constitution, establishing the Fish and Wildlife Conservation Commission to exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life. Establishing this condition was an appropriate way to ensure compatibility regarding wildlife. See LDC § 1-53-5.3(c). The circuit court afforded due process and applied the correct law as to these issues of compatibility.
The Seminole Tribe also argues in this court that the circuit court improperly reweighed the evidence regarding compatible uses. Specifically, the Seminole Tribe points to the following statement in the circuit court’s order:
Despite the lack of evidence as to the exact condition of visibility the court is of the opinion that given the distance of the stacks [from] the Tribe’s property, over 2 miles, and the buffering imposed as a condition of use, there is competent substantial evidence to support the County’s conclusion, express or implied, that the uses are compatible and the Tribe’s use will not be unduly negatively impacted.
The Seminole Tribe is asking this court to re-examine the record to determine whether the County’s conclusion was supported by competent, substantial evidence. We are unable to do so because of the limited scope of second-tier certiorari review. See Fla. Power & Light Co., 761 So.2d at 1093. But we are satisfied that the court afforded procedural due process and applied the correct law.

ACCOMMODATION OF ALL PROPOSED USES

The Seminole Tribe further argues that the rezoning does not include sufficient land area to properly accommodate all proposed uses as required by LDC sections 1-53-5.4(5) and (6). Section 1-53-5.4(5) provides as follows:
The land area included within the PUD development [sic] shall be of such proportions as to properly accommodate all proposed uses in keeping with the general requirements of the county and the established objectives and policies of the adopted comprehensive plan.
Section 1-53-5.4(6) provides:
There shall be no specific lot requirements for individual uses; provided, however, that the area designated for any particular use shall be of sufficient size and proportion so as to properly accommodate said use and to provide for adequate open space and buffering between it and an adjacent use.
The circuit court determined that, even though the magnitude of possible water use had probably not been considered by the drafters, these sections did not require the water needs for the PUD to be entirely self-contained. Therefore, the circuit court afforded due process and applied the correct law.

TERMINATION OF PUD REZONE

Finally, the Seminole Tribe argues that the Ordinance violates LDC section 1-53.5.4(9), which provides as follows:
A planned unit development rezone will terminate within three years of the date of approval if either a site development plan or preliminary subdivision plat application is not filed with the county. If one of these applications is not filed *25 within the specified time frame, the land shall revert back to the previous zoning district.
Section 2(b) of the Ordinance states that “[t]he PUD zoning shall remain in effect provided the landowner diligently pursues all regulatory approvals/licenses and shall be permanently vested upon approval of Phase I by the State of Florida Siting Board.” The circuit court determined that section 2(b) of the Ordinance did not comply with LDC section 1-53.5.4(9) but that there was competent, substantial evidence to support a variance allowing for section 2(b). The court noted that the applicant had not specifically requested a variance but had requested that the County modify the standard termination provision to accommodate the process for licensing under the Florida Electrical Power Plant Siting Act, sections 403.501-.518, Florida Statutes (2012). The court pointed out that the same formalities required for variance applications were followed in the process of adopting the Ordinance. Alternatively, the court determined that section 2(b) of the Ordinance was a condition as allowed under LDC section l-53-5.3(e). We conclude that the circuit court afforded due process and applied the correct law.

CONCLUSION

Though the circuit court incorrectly determined that the Ordinance was not subject to certiorari review, we conclude that the circuit court ultimately afforded procedural due process and applied the correct law in denying the Seminole Tribe’s petition. Accordingly, we deny the Seminole Tribe’s petition for writ of certiorari.
Petition denied.
ALTENBERND and BLACK, JJ„ Concur.

. The circuit court believed that the Seminole Tribe could not show irreparable injury because the planned unit development, which involves the creation of a large solar and natural gas power plant, is subject to the Florida Electrical Power Plant Siting Act. §§ 403.501-.518, Fla. Stat. (2012). Thus, in addition to the forums provided to the Seminole Tribe by the Hendry County Commission, the circuit court, and this court, the law provides for an administrative forum. The Seminole Tribe is a "substantially affected person” entitled to contest these matters before an administrative law judge. See § 403.50665(4), Fla. Stat. (2012). However, the option of the administrative hearing under the Florida Electrical Power Plant Siting Act is not a circumstance that should prevent the Seminole Tribe from seeking certiorari review in either the circuit court or this court.

. Though the Seminole Tribe raised additional issues of compatibility in the circuit court, such as public safety and transportation, it has not raised these arguments in this court and they will not be addressed here. See David M. Dresdner, M.D., P.A. v. Charter Oak Fire Ins. Co., 972 So.2d 275, 281 (Fla. 2d DCA 2008).